IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Ramie Kojo Fleming, a/k/a Ramie K. Fleming, | C/A No.: 1:09-1256-RBH-SVH |
| Plaintiff, | |
| vs. | REPORT AND RECOMMENDATION |
| South Carolina Department of Corrections, Jon Ozmint, George T. Hagan, Cecilia Reynolds, C. Earl Hunter, Mark Sanford, | |
| Defendants. | |

Plaintiff, Ramie Kojo Fleming, filed this pro se civil rights action pursuant to 42 U.S.C. §1983. Before the court are the following: (1) Plaintiff's Motion for Summary Judgment [Entry #29]; (2) Defendants' Motion for Summary Judgment and Amended Motions for Summary Judgment [Entries #30 and #43] (hereinafter "motion for summary judgment"); (3) Plaintiff's Motion for Mediation [Entry #54]; and (4) Plaintiff's Motion for a Preliminary Injunction. All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of Local Civil Rule 73.02(B)(2)(d) (D.S.C.). Because the motions for summary judgment are dispositive motions, this Report and Recommendation is entered for review by the district judge.

I. Procedural and Factual Background

Plaintiff filed his complaint on May 13, 2009, and his amended complaint on July 30, 2009 [Entries #1 and #15] (hereinafter "Complaint"). Defendants filed their original

motion for summary judgment on October 14, 2009, and their amended motion on March 1, 2010. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), Plaintiff was advised of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to the Defendants' motions. [Entries #31 and #44]. Plaintiff responded. [Entry #39 and #53]. Having carefully considered the parties' submissions and the applicable law, the court concludes that Defendants' motions should be granted and Plaintiff's motions should be denied.

Plaintiff complains of various conditions of confinement, and alleges they amount to cruel and unusual punishment. Specifically, Plaintiff complains as follows: (1) during October and November 2003 he was subject to inhumane living conditions based on having to take cold showers, open windows causing exposure to weather elements and claims pest infestation; (2) prison cafeterias are unsanitary and do not qualify for an "A" rating; (3) prisons use donated food which is served to inmates regardless of its fitness for consumption; (4) housing is inadequate based on "erratic heating and cooling" and prison overcrowding; (5) inadequate medical care, based upon delay in receiving care; (6) inadequate medical care based on the fact that he went to medical several times for constipation and the medicine he was given did not work; (7) inadequate medical care in that the medicine box does not contain enough medicine; (8) the chicken farm at MacDougall Correctional Institution is a health risk to the inmate population; (9) failure to protect while at Kershaw Correctional Institution, in that Plaintiff claims he told officials that he feared for his safety, but they failed to investigate or to transfer him to

another facility. With his complaint, the Plaintiff filed a statement regarding grievances he has filed in connection with these claims. In it, he states that the grievances have either been returned to him, "somehow vanished," or are still pending.

II. Standard of Review

A federal court must liberally construe pleadings filed by pro se litigants, to allow them to fully develop potentially meritorious cases. *See Cruz v. Beto*, 405 U.S. 319 (1972); *see also Haines v. Kerner*, 404 U.S. 519 (1972). In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim. *Weller v. Department of Social Services*, 901 F.2d 387 (4th Cir. 1990). Nor can the court assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c). The movant has the burden of proving that a judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial." The opposing party may not rest on the mere assertions contained in the pleadings. Fed. R. Civ. P. 56(e); *see also Celotex v. Catrett*, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence

of an essential element in the case, on which that party will bear the burden of proof at trial. *See* Fed. R. Civ. P. 56(c). Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact." In the *Celotex* case, the court held that defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the plaintiff failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof. *Celotex*, 477 U.S. at 322–323.

III. Analysis

A. Exhaustion of Administrative Remedies

Defendants contend that they are entitled to summary judgment on Plaintiff's claims because he has not exhausted his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), specifically 42 U.S.C. § 1997e(a). Section 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). To satisfy this requirement, a plaintiff must avail himself of every level of available administrative review. *See Booth v. Churner*, 532 U.S. 731 (2001). Those remedies neither need to

meet federal standards, nor are they required to be plain, speedy, and effective. *Porter*, 534 U.S. at 524 (quoting *Booth*, 532 U.S. at 739).

Satisfaction of the exhaustion requirement requires "using all steps that the agency holds out, and doing so *properly*." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)) (emphasis in original). Thus, "it is the prison's requirements, and not the [Prison Litigation Reform Act], that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007). The defendants have the burden of establishing that a plaintiff failed to exhaust his administrative remedies. *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 683 (4th Cir. 2005). Pursuant to SCDC policy, an inmate seeking to complain of prison conditions must first attempt to informally resolve his complaint. Next, an inmate may file a "Step 1 Grievance" with designated prison staff. If the Step 1 Grievance is denied, the inmate may appeal to the warden of his facility via a "Step 2 Grievance."

The purpose of the exhaustion requirement is twofold. First, it gives an administrative agency "an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court." *Woodford*, 548 U.S. 81, 89 (quoting *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992)). Second, "[c]laims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court." *Id.* Any consideration of administrative remedies pursued after the commencement of the litigation would only serve to frustrate both purposes of the PLRA's exhaustion requirement.

Here Plaintiff's inmate record reveals he has not exhausted his administrative remedies. (*See* Coleman Aff. at Entry #30-3). Specifically, SCDC Branch Chief of Inmate Grievances Mary Coleman attests to the following: With respect to claim identified as number #1 in his Complaint, he has filed no grievance prior to bringing this action. (Coleman Aff. at Entry #30-3). As to Plaintiff's claim identified as #2 he did not file any grievances. (*Id.*) Regarding claim #3 of the Complaint, the Plaintiff filed five grievances at Manning Correctional Institution (MCI-232-08, MCI-212-08, MCI-209-08, MCI-146-08 and MCI-145-08); three were unprocessed by the Institutional Grievance Coordinator, but Plaintiff did not appeal, and Plaintiff withdrew two of the complaints on August 11, 2008. (*Id.*) As to claim #4 of the Complaint, the Plaintiff filed grievance #ACI-377-09 on 4/22/09; he received a Warden's response on August 12, 2009, and it is presently at the Step 2 level for review with a final Agency response expected shortly. (*Id.*) With regard to claim #5, Plaintiff filed grievance #0317-09 concerning a medical incident of April 9, 2009, which was returned unprocessed as the grievance contained too many issues and inmates are required to file one issue per grievance. The Inmate Grievance Coordinator gave Plaintiff five days to resubmit his grievance and he failed to do so. (*Id.*) Plaintiff submitted seven grievances concerning the medicine box not being filled. (*Id.*) These grievances were combined and one response was prepared on August 5, 2009, (ACI-657-09) in which Plaintiff accepted the Warden's decision. (*Id.*) Plaintiff currently has one grievance open concerning Nurse Derrick and Warden Hagan (ACI-666-09) which is at currently at the Step 2 level and a final Agency response is

expected shortly. (*Id.*) As to claim #6, Plaintiff did not file any grievance at MacDougall Correctional Institution concerning the conditions of the chicken farm. (*Id.*) With regard to the Plaintiff's claim designated as #7, he filed grievance #KRCI-1271-07 and was served the Warden's response on September 7, 2007. He was given the opportunity to appeal to the Step 2 level, but failed to do so. (*Id.*)

Plaintiff does not dispute his failure to exhaust his administrative remedies. Rather, Plaintiff complains that some grievances "have mysteriously vanished" and that grievance forms are not readily available. However, Plaintiff has failed to allege any specific grievance that has "vanished" or any specific incidence where he asked for a grievance form and was denied the same. Plaintiff's vague and general allegations regarding the grievance process are insufficient to overcome the undisputed evidence that Plaintiff has failed to exhaust his administrative remedies on all of his claims.[1] Therefore, this court lacks jurisdiction over Plaintiff's claims and Defendants are entitled to summary judgment on all claims.

    B.    Plaintiff Lacks Standing

In order to state a claim under 42 U.S.C. § 1983, Plaintiff must allege that he has personally sustained some sort of deprivation of a right, privilege, or immunity secured by the U.S. Constitution or federal law. *Inmates v. Owen*, 561 F.2d 560, 562–63 (4th Cir. 1977). To demonstrate standing, Plaintiff must allege personal injury resulting from

---

[1] However, because Plaintiff has made such claims regarding problems with the grievance system, and in the event the district judge disagrees with the undersigned's assessment of Plaintiff's failure to exhaust, the undersigned analyzes Plaintiff's claims on the merits as well.

Defendants' unlawful conduct and that his injury is likely to be redressed by the relief requested. *Allen v. Wright*, 468 U.S. 737, 751 (1984). A pro se plaintiff does not have standing to assert claims of other inmates. *See Laird v. Tatum*, 408 U.S. 1 (1972); *see also Valley Forge Christian Coll. v. Americans United for Separation of Church & State*, 454 U.S. 464, 482 (1982); *Flast v. Cohen*, 392 U.S. 83, 99 (1968) (when determining whether plaintiff has standing to sue district court must focus on status of party filing complaint rather than the merits of the case); *Laker Carriers Ass'n v. MacMullan*, 406 U.S. 498, 506 (1972); *Hummer v. Dalton*, 657 F.2d 621, 625-626 (4th Cir. 1982) (prisoner cannot act as "knght-errant" for others).

Much of Plaintiff's complaint focuses on alleged claims of others. With the exception of his lost or broken teeth, constipation, and discomfort from being too hot or cold, Plaintiff alleges no injury to himself. He makes general claims regarding prison overcrowding, conditions of confinement, unsupported claims regarding sanitation of the cafeterias, and alleges a chicken farm is a health risk to SCDC inmates and the public. Plaintiff lacks standing to bring these claims; therefore, Defendants are entitled to summary judgment on these claims.

    C.    Medical Indifference

Although it is unclear, it appears that Plaintiff may also be asserting a claim of deliberate indifference to his serious medical needs. The Fourth Circuit has held that to bring a claim alleging the denial of medical treatment against non-medical prison personnel, an inmate must show that such officials were personally involved with a denial

of treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct. *Miltier v. Beorn*, 896 F.2d 848 (4th Cir.1990). Prison personnel may rely on the opinion of the medical staff as to the proper course of treatment. *Id.*

Under these principles, Plaintiff has not alleged sufficient facts stating any claim actionable under § 1983 regarding his medical treatment against Defendants, who are non-medical personnel. Plaintiff does not allege officials were personally involved with a denial of treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct. Therefore, Plaintiff's claim on this issue must be dismissed.

D. Failure to Protect

Plaintiff also brings a claim for failure to protect. The treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Not every injury suffered by one inmate at the hands of other inmates constitutes liability for the prison officials responsible for the victim's safety. *Id.* at 835. A prison official's "deliberate indifference" to a substantial risk of serious harm to an inmate, however, does violate the Eighth Amendment. *Id.* at 828. "[A] prison official may be held liable under the Eighth Amendment . . . only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847. The test is not whether an official knew or should have known of a substantial risk of serious

harm, but whether he did, in fact, know of it and consciously disregard that risk. "[T]he official must be both aware of facts from which the inference could be drawn that a possibility of harm exists, and he must also draw the inference. *Id.* at 837. Further, the Eighth Amendment is not violated by the negligent failure to protect inmates from violence. *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

The SCDC has developed a policy and procedure for the handling of protective custody of inmates. (*See* Reynolds Aff. at Entry #30-4). That policy provides that when an inmate requests protective custody he will be interviewed by the highest-ranked supervisor on duty at the time of the complaint. (*Id.*) The interviewer then must complete a "Protective Custody Evaluation" which documents the request. (*Id.*) The inmate must provide specific reasons for his request. If the inmate fails to provide specific details of the alleged threat to his safety he may be returned to general population. (*Id.*) All of this information is documented in the "Protective Custody Evaluation." (*Id.*) The interviewing official makes a recommendation on the form regarding his or her assessment of the inmate's reasons for requesting protective custody. The interviewing official may either recommend that the inmate be returned to general population or placed in "Pre-Hearing Detention with Protective Custody Concerns" (also referred to as SP), for further investigation. (*Id.*) The Evaluation is then immediately referred to the Warden for approval. (*Id.*) The inmate is provided a review within seven (7) days of placement in SP and appears before the Institutional Classification Committee (ICC) to justify or discuss placement in statewide protective custody housing. (*Id.*) In order to receive a

recommendation for this classification, the inmate must show at least one of five elements: (1) record of having been assaulted; (2) reputation among the population, attested to in writing by staff, as an informant or trial witness; (3) verified threats, verbal abuse, or harassment; (3) former police or criminal justice activity resulting in verified threats, verbal abuse, or harassment; (4) conviction of crime repugnant to inmate population; or (5) reliable confirmed evidence of sexual assault. (*Id.*) If there is no evidence or testimony to validate the inmate's claim, the inmate is returned to general population. (*Id.*) Inmates may appeal the decision regarding protective custody through the inmate grievance system.

In the case at hand, Plaintiff made written statements in which he indicated that he feared for his safety. His records indicate that he was placed in the Special Management Unit (SMU) in June 2007, where he remained until July 20, 2007, while an investigation was conducted. On July 26, 2007, Defendants returned Plaintiff to general population, based on a failure of Plaintiff to provide specificity regarding threats or inmates involved. Later that day, Plaintiff was being escorted by a detention officer back to his cell when another inmate ran up and began hitting him. (*Id.*) The officer took appropriate action to end the attack and Plaintiff was given immediate medical attention. Plaintiff's medical record for July 26, 2007, shows that he had some mild bruising and he was treated. (*Id.*) He was given a pass to report to medical for follow-up the next day, but he did not show up. (*Id.*)

Plaintiff claims in his complaint that he was attacked in August after requesting protective custody. However, the Plaintiff's inmate records establish that he did not want to be placed in protective custody. (*See* attachments to Reynolds Aff., Entry 30-4 at 11). Furthermore, Defendants have no record of any attack against the Plaintiff during this period of time, nor is there any record of a request for any medical treatment.

Thus, based on the record presented, Plaintiff has not shown that Defendants knew of a specific risk of harm to Plaintiff and consciously disregarded it. Thus, the bad acts of the assailant inmate cannot be constitutionally imputed to any of Defendants to support Plaintiff's failure-to-protect claim on the facts of this case.

E.  Conditions of Confinement

Plaintiff also complains about various conditions of confinement, most notably that the food is not sanitary. Sandra D. Craig is employed by DHEC as the Director of the Division of Food Protection. Among the responsibilities of the Division of Food Protection is the regulation and inspection of food establishments. (*See* Craig Aff. at Entry 30-8). Food establishments are inspected using a risk-based variable frequency inspection system. (*Id.*) A routine inspection is an unannounced, full and comprehensive evaluation of the entire physical establishment and all aspects of safe food handling practices. DHEC also conducts follow-up inspections to verify compliance or corrective action resulting from a previous inspection. (*Id.*) If DHEC receives a complaint about unsanitary conditions or unsafe food handling practices at an establishment it will conduct an investigation. (*Id.*)

Inspection rating scores range from 88-100 points for a Grade A rating, 78-87 points for a Grade B rating, and 70-77 points for a Grade C rating. Facilities with an "A" rating typically have very good to acceptable levels of sanitation during an unannounced routine inspection. (*Id.*) Correctional facilities are subject to the same standards as any other food service establishment. (*Id.*) All of the correctional institutions where the Plaintiff has been housed–MacDougall, Manning, Stevenson, Kershaw, Kirkland, Wateree, Allendale and Ridgeland–have received scores within the range for assignment of an "A" rating for their last two inspections. (*Id.*)

Plaintiff has made specific allegations concerning conditions of the cafeteria at Wateree. Bernd Atkinson is the Food Service Director at Wateree Correctional Institute. He has been a Food Service Director for 19 years and has been at Wateree for 7 years. (*See* Atkinson Aff. at Entry 30-9). Atkinson concedes that flies will be found at any food service establishment. (*Id.*) Wateree is a farm institution. It serves food to 900 inmates at a time. (*Id.*) When the door is opened to let those 900 inmates into the cafeteria, flies do get in. (*Id.*) However, everything possible is done to minimize these types of problems. The cafeteria at Wateree is inspected by DHEC once or twice every year. (*Id.*) Inspections are also conducted if a complaint is made. Wateree's cafeteria is subject to the same regulations and standards as any retail food establishment. (*Id.*) In addition to inspections by DHEC, it is inspected on a monthly basis by Department of Corrections inspectors from the central office in Columbia. (*Id.*) For at least the seven years that Atkinson has been at Wateree, it has received an "A" rating. (*Id.*) About 18 months ago, a complaint

was made to DHEC by an inmate or the inmate's family member regarding excessive flies in the cafeteria at Wateree. (*Id.*) DHEC made an inspection, but found Wateree's cafeteria to be within acceptable standards. (*Id.*) This cafeteria has never been shut down or even cited for unsanitary conditions. (*Id.*)

Thus, after a review of the record before the court, Plaintiff's conclusory claims are insufficient to establish a constitutional violation. Defendants are therefore entitled to summary judgment on this issue.

F. Qualified Immunity

Additionally, Defendants are entitled to qualified immunity. Qualified immunity shields governmental officials performing discretionary functions from liability for damages to the extent that their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Pritchett v. Alford*, 973 F.2d 307, 313 (4th Cir. 1992) (stating that qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law"). To resolve a qualified immunity defense, the court must determine whether the facts alleged, taken in the light most favorable to the plaintiff, show that the defendants' conduct violated a constitutional right, and whether the right was clearly established at the time of the alleged misconduct. *Pearson v. Callahan*, 129 S. Ct. 808, 815-16 (2009). Because Plaintiff has failed to establish that he was deprived of a constitutional right, the defendants are entitled to qualified immunity.

G. Plaintiff's Motion for Injunctive Relief

Plaintiff filed a motion for injunctive relief with regard to several new claims, unrelated to his Complaint, such as (1) lack of access to a law library while on lock-up; (2) disciplinary infraction of possession of a cellular device; (3) failure to give a rejection of correspondence for magazine subscriptions; and (4) failure to call a plumber.

"[P]reliminary injunctions are extraordinary remedies involving the exercise of very far-reaching power to be granted only sparingly and in limited circumstances." *MicroStrategy Inc. v. Motorola, Inc.*, 245 F.3d 335, 339 (4th Cir. 2001). "Because a preliminary injunction affords, on a temporary basis, the relief that can be granted permanently after trial, the party seeking the preliminary injunction must demonstrate by a 'clear showing' that, among other things, it is likely to succeed on the merits at trial." *Id.* (citations omitted). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council*, --- U.S. ----, ----, 129 S.Ct. 365, 374 (2008). By statute, the PLRA grants courts the authority to enter a temporary restraining order or an order for preliminary injunctive relief in civil actions concerning prison conditions; however,

> [p]reliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief

and shall respect the principles of comity set out in paragraph (1)(B) in tailoring any preliminary relief. Preliminary relief shall automatically expire on the date that is 90 days after its entry, unless the court makes the findings required under subsection (a) (1) for the entry of prospective relief and makes the order final before the expiration of the 90-day period.

18 U.S.C. § 3626(a)(2).

Traditionally, preliminary injunctions are sought to "protect the status quo and to prevent irreparable harm during the pendency of a lawsuit ultimately to preserve the court's ability to render a meaningful judgment on the merits." *In re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 525 (4th Cir. 2003). Mandatory preliminary injunctions, in comparison, compel action. The Fourth Circuit explained:

> "Mandatory preliminary injunctions [generally] do not preserve the status quo and normally should be granted only in those circumstances when the exigencies of the situation demand such relief." *Wetzel v. Edwards*, 635 F.2d 283, 286 (4th Cir. 1980). That is to say, a mandatory preliminary injunction must be necessary both to protect against irreparable harm in a deteriorating circumstance created by the defendant and to preserve the court's ability to enter ultimate relief on the merits of the same kind.

*Id*. at 526. Here, Plaintiff's motion for injunctive relief must fail. The types of claims Plaintiff makes are improper for relief by a preliminary injunction. Plaintiff has not demonstrated he will suffer irreparable harm or that he is likely to succeed on the merits. Therefore, Plaintiff has failed to establish the elements necessary to demonstrate the need for a preliminary injunction.

IV.  Conclusion

For the reasons discussed above, it is recommended that Defendants' Motions for Summary Judgment [Entries #30 and #43] be granted and Plaintiff's Motions for Summary Judgment [Entry #29], Mediation [Entry #54], and for Preliminary Injunction [Entry #57] be denied and this case be dismissed in its entirety.

IT IS SO RECOMMENDED.

August 3, 2010  Shiva V. Hodges
Florence, South Carolina  United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**